2010 ME 107

**KURTZ & PERRY, P.A.**

v.

**Nancy J. EMERSON.**

Supreme Judicial Court of Maine.

Argued: Sept. 16, 2010.

Decided: Oct. 26, 2010.

Stephean C. Chute, Esq. (orally), Rumford, ME, for Nancy J. Emerson.

Wendell G. Large, Esq., Carol I. Eisenberg, Esq. (orally), Richardson, Whitman, Large & Badger, Portland, ME, for Alan J. Perry, Esq. and Kurtz & Perry, P.A.

Panel: SAUFLEY, CJ., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

ALEXANDER, J.

[¶ 1]   This appeal presents the question of whether, and to what extent, a decision by a panel of the Fee Arbitration Commission, pursuant to Maine Bar Rule 9, that is adopted as a judgment of the trial court, may serve as a full or partial bar to a legal malpractice counterclaim asserted in the fee collection action.

[¶ 2]   Nancy J. Emerson appeals from a summary judgment entered in the Superior Court (Oxford County, *Nivison, J.*) in favor of the law firm of Kurtz & Perry, P.A., (K & P) and Alan J. Perry on Emerson's counterclaims and third-party claims for legal malpractice. In granting K & P and Perry a summary judgment, the court applied the res judicata doctrine, concluding that factual issues previously decided by a panel of the Fee Arbitration Commis-

sion precluded Emerson from relitigating those issues in her malpractice claims. On appeal, Emerson raises two issues.

[¶ 3] First, Emerson argues that the court erred in the application of the res judicata doctrine, because fee arbitration panel proceedings and determinations lack an essential element of adjudication—the opportunity for de novo review on the merits—without which, Emerson contends, res judicata may not apply.

[¶ 4] Second, Emerson argues that res judicata cannot apply because the Fee Arbitration Panel exceeded its authority in addressing certain factual issues that were irrelevant to resolving the fee dispute, and that she is not, therefore, estopped from relitigating those factual issues with respect to her malpractice claim. We affirm the Superior Court's judgment.

## I. CASE HISTORY

[¶ 5] The following facts, viewed in a light most favorable to Emerson, as the nonmoving party, are established in the summary judgment record. *See Lloyd v. Estate of Robbins,* 2010 ME 59, ¶ 2, 997 A.2d 733, 736.

[¶ 6] Emerson retained Alan Perry of K & P to represent her in a divorce proceeding in 2001. The divorce matter was mediated, and Emerson and her then-husband, represented by separate counsel, signed a divorce settlement agreement for submission to the court in 2004. The summary judgment record indicates that the settlement agreement provided that the parties would be responsible for their own attorney fees, although the agreement itself is not in the record.

[¶ 7] In May 2005, K & P filed a complaint against Emerson, alleging that she owed the firm $34,608 in unpaid attorney fees incurred during the divorce proceedings. Emerson filed an answer and two-

count counterclaim against K & P, and a third-party claim against Perry individually, for malpractice/breach of contract and malpractice/negligence, alleging, as relevant to this appeal, that she had not entered into a fee agreement with Perry and that "at all times during the representation within the pending divorce, ... Emerson ... was advised that [her] husband ... would be responsible for the payment of all legal bills."

[¶ 8] The proceedings in Superior Court were subsequently stayed pending the outcome of a fee arbitration proceeding that Emerson initiated pursuant to Rule 9 of the Maine Bar Rules, naming K & P and Perry as respondents. Emerson argued to the Fee Arbitration Panel, in her petition and during a three-day evidentiary hearing, that she: (1) never entered into a fee agreement with Perry and K & P; (2) never agreed to be responsible for her legal fees; (3) was told that amounts she had already paid in legal fees to the firm would be refunded; and (4) was assured that her then-husband would pay her attorney fees as part of the divorce settlement agreement, but that Perry and K & P neglected to include a provision to that effect in the settlement agreement.

[¶ 9] The Fee Arbitration Panel issued a written determination and award, concluding that, although there had been no written fee agreement, Perry had met his burden of showing that there was an agreement that Emerson would pay a fee to Perry/K & P, that the fees and expenses charged were reasonable, and that Emerson owed K & P $34,358.37. The Fee Arbitration Panel found for Perry/K & P "on all material factual issues relating to [Emerson's] obligation to pay attorneys fees." The panel determined that Emerson routinely asked Perry and K & P about her obligation to pay fees billed to her, indicating that she doubted that her

husband would actually pay her fees, and that she "was fully cognizant of" the possibility that a provision requiring her then-husband to pay her attorney fees "might not be a part of the ultimate judgment or settlement agreement." The panel also found that Emerson was aware that the final divorce agreement did not require her husband to pay her legal fees.

[¶ 10] K & P moved pursuant to M. Bar R. 9(i) for entry of a judgment in accordance with the Fee Arbitration Panel's determination. The court (*Delahanty, J.*) granted the motion in January 2007, entering a judgment that stated, "On the Motion of [K & P] for Entry of Judgment, judgment is ordered for [K & P] and against [Emerson] in the amount of $34,358.37 with interest and costs."

[¶ 11] In July 2007, the court entered a scheduling order on Emerson's counterclaim and third-party claim, requiring the designation of expert witnesses by a certain date. Emerson designated no expert witnesses to support her legal malpractice claims.

[¶ 12] After filing two separate motions to dismiss, both of which were denied, K & P and Perry filed a motion for summary judgment in November 2008 as to all counts of Emerson's claims. K & P and Perry asserted that without an expert, Emerson could not prove her malpractice claims. The court (*Horton, J.*) granted K & P and Perry a partial summary judgment in March 2009. The court determined that the only allegation that did not require support by expert testimony was Emerson's allegation in paragraph nineteen of her counterclaim that her attorney led her to believe that her ex-husband would pay her attorney fees from the divorce, but negligently failed to incorporate a provision effectuating that agreed-upon arrangement in the settlement agreement. Accordingly, the court denied the motion

for a summary judgment with respect to that one claim.

[¶ 13] K & P and Perry then filed a second motion for summary judgment arguing that Emerson was precluded from pursuing her remaining claim for malpractice concerning the payment of her attorney fees by (1) the January 2007 court judgment entered on the Fee Arbitration Panel determination, and (2) her failure to designate a necessary expert.

[¶ 14] Following a hearing, the court (*Nivison, J.*) granted a summary judgment to K & P on June 23, 2009. The court concluded that Emerson's prior litigation of factual issues concerning her obligation to pay her own attorney fees before the Fee Arbitration Panel precluded her from relitigating those same issues in support of her legal malpractice claim. The court subsequently entered a corrective summary judgment in favor of K & P and Perry, from which Emerson timely appeals.

## II. LEGAL ANALYSIS

[¶ 15] We review a grant of summary judgment de novo, considering the evidence in the light "most favorable to the nonprevailing party to determine whether the parties' statements of material facts and the record evidence to which the statements refer demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Rainey v. Langen*, 2010 ME 56, ¶ 23, 998 A.2d 342, 349. A genuine issue exists when sufficient evidence supports a factual contest, requiring a factfinder to choose between competing versions of the truth at trial. *Id.*

[¶ 16] The doctrine of res judicata, "designed to ensure that the same matter will not be litigated more than

once," has two components: collateral estoppel, also known as issue preclusion, and claim preclusion. *Macomber v. MacQuinn–Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131, 138. Collateral estoppel, the component of res judicata at issue in this case, "prevents a party from relitigating factual issues already decided if the identical issue necessarily was determined by a prior final judgment, and the party estopped had a fair opportunity" and incentive to litigate the issue in the prior proceeding. *Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 7, 982 A.2d 339, 342; *Macomber*, 2003 ME 121, ¶ 22, 834 A.2d at 138–39. We apply this general rule to the discussions below.

## A. Application of Res Judicata to a Fee Arbitration Panel Determination

■ [¶ 17] Emerson first argues the narrow legal issue that a Fee Arbitration Panel determination cannot constitute an adjudication because there is no opportunity for de novo appellate review of that determination. Consequently, Emerson asserts, collateral estoppel cannot bar litigation of factual issues, such as those relating to her legal malpractice claims against K & P and Perry, in a subsequent court proceeding.

[¶ 18] The findings made by the Fee Arbitration Panel, to the extent necessary to its determination, *see Efstathiou*, 2009

ME 107, ¶ 7, 982 A.2d at 342, have preclusive effect for purposes of collateral estoppel. We have recently held that a "valid and final award by arbitration has the same effects under the rules of res judicata . . . as a judgment of a court" as long as the process leading to the award contains the essential elements of adjudication. *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 14, 989 A.2d 733, 739 (holding that an arbitration award had preclusive effect under the doctrine of collateral estoppel even though the award was not judicially confirmed).

■ [¶ 19] The essential elements of adjudication include:

(1) adequate notice, (2) the right to present evidence and legal argument and to rebut opposing evidence and argument, (3) a formulation of issues of law or fact to apply rules to specified parties concerning a specified transaction, (4) the rendition of a final decision, and (5) any other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question.

*Id.* ¶ 13, 989 A.2d at 738. Contrary to Emerson's contention, the availability of de novo review on the merits of the Fee Arbitration Panel's decision is not a factor that is considered in determining that decision's preclusive effect.[1]

1. We have not announced a rule that the availability of de novo review on the merits is a required element for determining that a decision of an arbitration panel is an adjudication for purposes of applying collateral estoppel or the res judicata doctrine generally. The cases that Emerson cites as support for her argument, *State v. Thompson*, 2008 ME 166, 958 A.2d 887, and *Town of Boothbay v. Jenness*, 2003 ME 50, 822 A.2d 1169, are not analogous to the case at hand. *Thompson* involved an administrative decision resulting from a procedure that did not contain the essential elements of adjudication. However, because the complaining party had an oppor-

tunity to challenge that decision in an administrative reconsideration and then in a proceeding that would have contained the essential elements of adjudication (in that case, a de novo judicial hearing and determination), we held that the party's failure to exercise his right to an available appeal resulted in a res judicata effect on the subsequent litigation of identical issues and claims dealt with in the administrative decision. *Thompson*, 2008 ME 166, ¶¶ 13–16, 958 A.2d at 892; *see also Town of Boothbay*, 2003 ME 50, ¶ 21, 822 A.2d at 1175–76. Conversely, the arbitration proceeding in this case itself

[¶ 20] The summary judgment record reveals that the elements of adjudication were present in the fee arbitration proceeding as between Emerson and Perry/K & P, which resulted in a valid and final award. Accordingly, the collateral estoppel component of the res judicata doctrine is applicable to bar the relitigation of factual issues necessarily determined by the Fee Arbitration Panel.

[¶ 21] Even if the Fee Arbitration Panel's final determination was not judicially confirmed or reduced to a court judgment, because the essential elements of adjudication were present in the fee arbitration proceeding, the panel's determination is capable, as a matter of law, of having preclusive effect. *See Beal*, 2010 ME 20, ¶ 14, 989 A.2d at 739. In this case, the record indicates that the court did enter a judgment on the Panel's determination pursuant to M. Bar R. 9(i) and the Uniform Arbitration Act, 14 M.R.S. §§ 5927–5949 (2009). Such a judgment may "be enforced as any other judgment or decree," 14 M.R.S. § 5940, which is a final judgment capable of preclusive effect. *See, e.g., W. Indus. & Envtl. Servs., Inc. v. Kaldveer Assocs., Inc.*, 126 Idaho 541, 887 P.2d 1048, 1050–51 (1994) (holding that a judgment entered upon an arbitration award, pursuant to that state's Uniform Arbitration Act, is a final judgment for purposes of applying collateral estoppel, determining also that adjudicatory procedures were present in the arbitration proceeding).

B.  Application of Collateral Estoppel to this Case

[¶ 22] Having concluded that the Fee Arbitration Panel's determination was contained the essential elements of adjudication, and the resulting determination is thus capable of having preclusive effect.

an adjudication for purposes of the application of collateral estoppel, we consider the extent to which the Panel's factual findings in this case have preclusive effect with respect to Emerson's remaining legal malpractice claim against Perry and K & P.

[¶ 23] At oral argument, Emerson alluded to two possible legal theories to support her remaining malpractice claim: (1) Emerson and Perry/K & P entered into an oral agreement or contract that Emerson would not pay her own attorney fees and that her fees would be paid by her ex-husband as part of the divorce settlement, but Perry/K & P failed to incorporate a provision to that effect into the settlement; and (2) as part of effective representation of Emerson in her divorce matter, Perry and K & P should have incorporated a provision into the divorce settlement agreement requiring Emerson's ex-husband to pay her attorney fees, but they negligently failed to do so.

[¶ 24] As discussed above, collateral estoppel prevents a party from relitigating factual issues already decided "if the identical issue necessarily was determined by a prior final judgment, and the party estopped had a fair opportunity" and incentive to litigate the issue in the prior proceeding. *Efstathiou*, 2009 ME 107, ¶ 7, 982 A.2d at 342 (quotation marks omitted); *Macomber*, 2003 ME 121, ¶ 22, 834 A.2d at 138–39. In order to resolve the fee dispute between Emerson and Perry/K & P, the Fee Arbitration Panel necessarily was required to make factual findings as to whether Emerson agreed to pay attorney fees to Perry/K & P and whether the fees charged to her were reasonable, and Emerson had the opportunity and incentive to litigate this issue. *See* M. Bar R. 9(g)(13).[2]

2.  M. Bar R. 9(g)(13) describes the factual findings a fee arbitration panel must make in order to resolve a fee dispute, providing:

> In the event there is no written agreement or engagement letter between the parties

Thus, Emerson's contract-based theory is barred by the fee arbitration adjudication.

■ [¶ 25] Emerson's other theory in support of her legal malpractice claim is, in essence, a claim that Perry/K & P did not advocate zealously enough for her interests. She asserts that Perry/K & P committed legal malpractice by negligently failing to include a provision in her divorce settlement agreement requiring her ex-husband to pay her attorney fees. This claim involves some factual determinations that, to the extent the Fee Arbitration Panel made them, were not necessary to the panel's resolution of the fee dispute at issue before it. Accordingly, Emerson would not be barred by collateral estoppel from litigating factual issues relating to that theory of her claim. However, Emerson is barred from pursuing that theory of her claim because she did not designate an expert witness to address the issue.

■ [¶ 26] Expert testimony is required in a legal malpractice claim to establish the appropriate standard of care and whether an attorney breached that standard of care, except when the breach or lack thereof is so obvious that it may be determined by a court as a matter of law or is within the ordinary knowledge of laymen. *Pitt v. Frawley*, 1999 ME 5, ¶ 9, 722 A.2d 358, 360–61; *Jim Mitchell & Jed Davis, P.A. v. Jackson*, 627 A.2d 1014, 1017 (Me.1993); *see also Garland v. Roy*, 2009 ME 86, ¶ 19, 976 A.2d 940, 946 (discussing the elements of a legal malpractice claim). The appropriate standard of care, and whether Perry/K & P breached a duty of zealous representation to Emerson by negotiating a divorce settlement that did not include a requirement that Emerson's ex-husband pay all of her attorney fees, is

not obvious or within a layman's common knowledge and would have required expert testimony. As represented at oral argument, the marital estate at issue in this case was substantial. Understanding the calculations, negotiations, and strategy involved in resolving the terms of a complex divorce settlement, and understanding how a provision requiring Emerson's ex-husband to pay her attorney fees would have fit into or altered that divorce agreement, would require the assistance of expert testimony. *See generally Pitt*, 1999 ME 5, ¶ 9, 722 A.2d at 360–61.

[¶ 27] Emerson did not designate an expert with respect to her legal malpractice claims. The court previously had properly entered a summary judgment in Perry and K & P's favor with respect to all of Emerson's malpractice claims that required the designation of an expert. Because the theory that Emerson has advanced herein is such a claim, it was subject to the court's March 2009 grant of a partial summary judgment in favor of Perry and K & P and no longer is a viable basis for Emerson's legal malpractice claim.

The entry is:

Judgment affirmed.

concerning fees and expenses as to the particular matter in dispute, the arbitration panel shall require that the attorney bear the burden of proof of an agreement, or

other basis for recovery of fees and expenses, and of the reasonableness of the fees and expenses.