MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2020 ME 114
Docket:       Yor-19-40
Argued:       September 26, 2019
Decided:      September 22, 2020

Panel:        MEAD, GORMAN,* JABAR, and HUMPHREY, JJ., and HJELM, A.R.J.**

WENDY REPPUCCI

v.

JAMES P. NADEAU et al.

MEAD, J.

[¶1]  James P. Nadeau and Nadeau Law Offices, PLLC (Nadeau), appeal from a judgment entered by the Superior Court (York County, *O'Neil, J.*), following a jury trial, awarding Wendy Reppucci $91,172, plus costs and interest, on her complaint for legal malpractice arising from Nadeau's representation of Reppucci in a divorce action.  Nadeau contends that, concerning some of Reppucci's claims for damages, the court erred in

---

*  Although not available at oral argument, Justice Gorman participated in the development of this opinion.  *See* M.R. App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

**  Justice Hjelm sat at oral argument and participated in the initial conference while he was an Associate Justice and, on order of the Senior Associate Justice, was authorized to continue his participation in his capacity as an Active Retired Justice.  Chief Justice Saufley sat at oral argument and participated in the initial conference but resigned before this opinion was certified. Justice Alexander sat at oral argument and participated in the initial conference but retired before this opinion was certified.

2

instructing the jury on Reppucci's burden to prove proximate cause using language that we first discussed in *Niehoff v. Shankman & Associates Legal Center, P.A.*, 2000 ME 214, ¶ 10, 763 A.2d 121.[1]

[¶2] We disagree and affirm the judgment. In doing so, we clarify that what we have termed the "modified" or "failure to plead" proximate cause standard in *Niehoff* and in two other cases[2] is not an independent alternative test, but is rather a case-specific application of the proximate cause standard that we have always applied in legal malpractice cases.

## I. BACKGROUND

[¶3] Attorney James Nadeau represented Wendy Reppucci in her 2008 divorce from Richard Reppucci. The divorce judgment, entered in the District Court (York, *Janelle, J.*) following a trial, contained the following provisions that are at issue in this appeal:

- spousal support was not awarded to either party "now or in the future";

- attorney fees were to be paid by the party incurring them;

- the marital home was awarded to Wendy, subject to her payment to Richard of $36,350 plus 5% annual interest for his equity interest once any of the several triggering events specified in the judgment occurred;

---

[1] Nadeau makes several other assertions of error that we do not find persuasive and do not discuss further.

[2] *See MSR Recycling, LLC v. Weeks & Hutchins, LLC*, 2019 ME 125, ¶ 6, 214 A.3d 1; *Brooks v. Lemieux*, 2017 ME 55, ¶ 12 & n.5, 157 A.3d 798.

- the value of Richard's military retirement benefits as of the date of the divorce judgment was divided equally between the parties; and

- the value of Richard's Thrift Savings Plan (TSP)—essentially the military version of a 401(k) account—calculated as of the date of the judgment was divided equally between the parties.

Because Richard had served in the Air Force, a benefit providing income to the survivors of military members known as the Survivor Benefit Plan (SBP) was potentially available to Wendy.  It was not addressed in a proposed judgment that Nadeau submitted or in the divorce judgment.

[¶4]  In September 2014, Reppucci filed a two-count complaint against Nadeau in the Superior Court alleging legal malpractice and breach of fiduciary duty.[3]  Concerning the claims for which the jury ultimately awarded damages, Reppucci asserted, either in the complaint or at trial, that Nadeau was negligent when he

- failed to properly advise her concerning the availability of spousal support and to advocate for spousal support when it would have been reasonable for the court to award it;

- failed to request attorney fees when she could not afford to pay them;

- failed to obtain an appraisal of the value of the marital home, challenge the 5% interest rate on Richard's equity award as excessive, advise her that the future equity payment to Richard would prevent her from

---

[3] Nadeau's motion for judgment as a matter of law on the count alleging breach of fiduciary duty was granted at the end of the trial and is not at issue in this appeal.

4

refinancing the mortgage, or advocate that the parties share the costs incurred in the future sale of the home;

- failed to advise her of her eligibility to be covered by the SBP or to advocate for its inclusion in the divorce judgment, resulting in the opportunity for coverage being permanently lost;

- proposed language that did not comply with federal law in dividing Richard's military retirement benefits, resulting in additional legal expenses to have the judgment corrected before it was accepted by the Department of Defense; and

- failed to propose language for the judgment's TSP provision that would be accepted by the military, and failed to conduct discovery that would have revealed Richard's withdrawal of funds from his TSP account, with the result that no money was available once the judgment was eventually corrected.

[¶5] The case was tried to a jury in June 2018. The jury found that Nadeau had breached the standard of care and awarded Reppucci a total of $91,172 in damages on her claims related to spousal support, attorney fees, the marital home, the SBP, military retirement benefits, and the TSP. The court entered a judgment in accordance with the verdict.

[¶6] Nadeau filed post-judgment motions for judgment as a matter of law and for a new trial, which the court denied following a hearing. Nadeau timely appealed. *See* M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

A.      Proximate Cause

[¶7]  We have said that

> [t]o prove attorney malpractice, a plaintiff must show (1) a breach by the defendant of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of that duty proximately caused an injury or loss to the plaintiff.

*Brooks v. Lemieux*, 2017 ME 55, ¶ 9, 157 A.3d 798 (quotation marks omitted). In order to satisfy the proximate cause prong of that test, "a plaintiff must demonstrate that he or she would have achieved a more favorable result but for the defendant's alleged legal malpractice."  *Niehoff*, 2000 ME 214, ¶ 9, 763 A.2d 121; *see Garland v. Roy*, 2009 ME 86, ¶ 20, 976 A.2d 940.  Without such proof, the existence of a causal connection between the negligent conduct and any damages is speculative or conjectural, and cannot support a judgment favorable to the plaintiff.  *See Niehoff*, 2000 ME 214, ¶ 8, 763 A.2d 121.

[¶8]  In 2000, we said in *Niehoff* that a modified proximate cause test applies in "failure to plead" legal malpractice actions.  *Id.* ¶ 10; *see Brooks*, 2017 ME 55, ¶ 12, 157 A.3d 798.  *Niehoff* was a case where a summary judgment had been entered for the defendant-attorney.  2000 ME 214, ¶ 5, 763 A.2d 121. Addressing the legal standard to be applied in that procedural context, we stated,

On appeal from a grant of summary judgment, a plaintiff-appellant in a "failure to plead" legal malpractice action must demonstrate that . . . (1) the defendant attorney was negligent in representation of the plaintiff; and (2) the attorney's negligence caused the plaintiff to lose an opportunity to achieve a result, favorable to the plaintiff, which (i) the law allows; and (ii) the facts generated by [the parties' summary judgment filings] would support, if the facts were believed by the jury. Where a plaintiff generates fact disputes on these issues, summary judgment must be denied and plaintiff is entitled to proceed to trial.

*Id.* ¶ 10; *see MSR Recycling, LLC v. Weeks & Hutchins, LLC*, 2019 ME 125, ¶ 6, 214 A.3d 1.

[¶9]  This formulation has proved to be a source of confusion as parties and trial courts have thought it necessary to distinguish "failure to plead" cases from "garden-variety" malpractice claims so as to apply either the "modified test" or the "ordinary" proximate cause test.  *See Brooks*, 2017 ME 55, ¶¶ 11-13 & n.5, 157 A.3d 798; *Niehoff*, 2000 ME 214, ¶¶ 9-10, 763 A.2d 121.  We take this opportunity to clarify the nature of what we have sometimes referred to as the "modified malpractice standard," *Brooks*, 2017 ME 55, ¶ 12, 157 A.3d 798, which originated in *Niehoff.*

[¶10]  To understand our opinion in *Niehoff*, it is critical to recognize that it addressed only what a plaintiff must show to defeat a defendant's motion for a summary judgment based on an assertion that no causal relationship exists between the alleged negligence and claimed damages.  A moving party is not

entitled to summary judgment when the opponent generates disputed issues of material fact, *see* M.R. Civ. P. 56(c); *InfoBridge, LLC v. Chimani, Inc.*, 2020 ME 41, ¶¶ 12-13, 228 A.3d 721, and so, as a summary judgment case, *Niehoff* does nothing more than identify the salient issues for a court to consider in that context. In essence, when adjudicating a summary judgment motion, the court must determine whether, based on the summary judgment record, the factfinder in the malpractice case *could* conclude that the claim that the attorney failed to assert in the underlying action would have yielded a favorable result for the plaintiff. *See Johnson v. York Hosp.*, 2019 ME 176, ¶ 29, 222 A.3d 624 (stating that, on a defendant's motion for summary judgment, the plaintiff need only meet a burden of production for factual issues). *Niehoff* does not modify the nature of the plaintiff's ultimate burden of persuasion at trial to prove proximate cause, which, as we stated, remains the familiar standard that, absent the attorney's alleged negligence, the plaintiff *would* have enjoyed a more favorable outcome in the underlying action. 2000 ME 214, ¶ 9, 763 A.2d 121.

[¶11] Thus, *Niehoff* presents no more than a case-specific application of the proximate cause test that we have long employed. In other words, at trial, there are not two different legal malpractice tests requiring courts to elect one

or the other, and a plaintiff does not enjoy a lesser burden of proof in a "failure to plead" case. The single test is the same as it was when we decided *Niehoff*: "In legal malpractice cases, the plaintiff must show (1) a breach by the defendant attorney of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of the duty proximately caused an injury or loss to the plaintiff." *Id.* ¶ 7.

[¶12] In the usual case where an attorney's negligence involves "advice or tactics . . . preced[ing] a final result on the merits of an underlying action," "a more favorable result" is measured against the result that was actually obtained, be it a judgment for the opposing party in the underlying case or—as here—a judgment in a party's favor that the party views as insufficient. *Id.* ¶ 9. In other words, at trial the plaintiff must prove by a preponderance of the evidence that the attorney's malpractice resulted in the fact-finder basing a decision on a poorly presented case as a result of deficient advice or trial tactics, depriving the plaintiff of "a more favorable result." *Id.*

[¶13] When a particular case involves not a poorly presented claim but rather an attorney's complete failure to put a claim before the fact-finder for decision, as occurred in *Niehoff* and *MSR Recycling*,[4] the proximate cause

---

[4] In *Niehoff*, we considered a law firm's failure to bring a discrete federal employment law claim on behalf of its client as part of a tort suit against the client's employer; the client later sued the firm

standard remains the same—the plaintiff must still prove "that he or she would have achieved a more favorable result but for the defendant's alleged legal malpractice." *Niehoff*, 2000 ME 214, ¶ 9, 763 A.2d 121. What changes is the baseline from which "a more favorable result" is measured. Whereas a poorly presented case decided by a fact-finder yields a certain result, which then forms the starting point for the proximate cause analysis, a "failure to plead" case yields no result at all because the claim was never put before the fact-finder for decision in the first instance. In the latter circumstance, in order to satisfy the proximate cause standard, the plaintiff must prove that, but for the attorney's negligence, he or she would have achieved *any* favorable result, because any positive result is "more favorable" than the absence of a result.

[¶14] Whether the baseline is a judgment resulting from an attorney's negligent performance in presenting a case or the absence of a judgment resulting from the attorney's failure to present a claim at all, a legal malpractice

---

for malpractice. 2000 ME 214, ¶¶ 3-5, 763 A.2d 121. We noted that the client's "opportunity to get [the federal employment law claim] before the factfinder [was] lost." *Id.* ¶ 9.

In *MSR Recycling*, the plaintiff's attorney failed to file an appellate brief in the Superior Court in a M.R. Civ. P. 80B appeal, resulting in the appeal being dismissed. 2019 ME 125, ¶¶ 1, 3, 6-7, 214 A.3d 1. We clarify our statement in *MSR Recycling* that a "failure to plead" situation arises "[i]n a legal malpractice action based on an attorney's failure to timely plead *or file a required document with the court*," *id.* ¶ 6 (emphasis added), which could, read in isolation, suggest that the failure to file any document required by the court or by rule would constitute a "failure to plead." Properly read in context, a "required document" is one that is necessary to bring a claim before a court for adjudication and without which the claim is never heard.

plaintiff must establish that he or she was deprived of a "more favorable result" in the underlying case by proving what its outcome would have been had the attorney not been negligent. In *Brooks,* we cited an opinion of the Connecticut Supreme Court explaining that

> the plaintiff typically proves that the attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the attorney not been negligent. This traditional method of presenting the merits of the underlying action is often called the "case-within-a-case."

2017 ME 55, ¶ 18, 157 A.3d 798 (quoting *Bozelko v. Papastavros*, 147 A.3d 1023, 1029 (Conn. 2016) (alterations and quotation marks omitted)); *see Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 1998 ME 210, ¶ 15, 718 A.2d 186 ("In an action following an attorney error during trial, the court addressing the causation issue in the subsequent malpractice action merely retries, or tries for the first time, the client's cause of action which the client asserts was lost or compromised by the attorney's negligence." (quotation marks omitted)).

[¶15] In this case there was a clear baseline from which a "more favorable result" could be measured—the awards made in the divorce judgment. *Niehoff,* 2000 ME 214, ¶ 9, 763 A.2d 121. Whether Reppucci was deprived of a more favorable result because of Nadeau's failure to present certain issues or because of Nadeau's advice on, and presentation of, certain

other issues is determined against that same baseline. With that principle in mind, we turn to an examination of the court's jury instructions.

B.    Jury Instructions

[¶16]  The trial court applied the *Niehoff* formulation to five of Reppucci's economic claims[5] and instructed the jury accordingly:

> With respect to claims that the plaintiff has made alleging that the defendant negligently failed to assert or argue a claim in the underlying divorce . . . [she] must show that . . . the attorney's negligence caused [her] to lose an opportunity to achieve a result favorable to [her] which the law allows and the facts in the divorce case would have supported.

[¶17]  The jury was further instructed to apply that proximate cause standard and report its decision on a verdict form, which asked, with respect to those claims, "[D]id the Defendant's breach of the standard of care cause the plaintiff to lose an opportunity to achieve a result, favorable to plaintiff, which (1) the law allows, and (2) the evidence supports in the divorce action?" As to four of those claims, the jury answered in the affirmative and awarded Reppucci damages totaling $80,522.

[¶18]  Concerning Reppucci's two remaining claims,[6] the jury was instructed, in part,

---

[5] The court applied the *Niehoff* language to Reppucci's claims concerning spousal support, attorney fees, a tax lien debt allocation, the marital real estate, and the SBP.

12

> [T]he plaintiff must prove . . . by a preponderance of the evidence[] that the defendant committed professional negligence in his representation of the plaintiff, that the defendant's professional negligence was a substantial factor in causing an unfavorable result or harm, and the defendant's professional negligence was a cause of the loss or the damages that have been claimed by the plaintiff.[7]

The court restated that instruction when it explained the verdict form.

[¶19]  We first note that this is not a "failure to plead" case of the type that gave rise to our decision in *Niehoff*.  Nadeau filed a divorce complaint on Reppucci's behalf, took the case to trial, and obtained a judgment in Reppucci's favor on the two issues that she testified were most important to her—primary residence of the children and her right to stay in the marital home.  Reppucci contends that with appropriate legal advice she would have also achieved a more favorable result on other financial issues that are the focus of this appeal.  Because all economic issues were placed before the court by the divorce complaint and various pretrial filings and orders,[8] Reppucci challenges

---

[6]  The court did not apply the *Niehoff* language to those two claims, which concerned military retirement benefits and the TSP, because Nadeau presented and pursued those claims in the divorce action, albeit, as the jury concluded, negligently.

[7]  *See* Alexander, *Maine Jury Instruction Manual* § 7-77 at 7-108 (2018-2019 ed. 2018), which sets out a choice between the "substantial factor" language used by the court and an alternative: "But for the defendant's professional negligence . . . the plaintiff[] would have achieved a more favorable result . . . ."  At sidebar, the court explained that because there was evidence that Richard Reppucci's actions had been a factor in Wendy Reppucci's alleged loss with respect to the TSP, "had I not used the substantial factor [instruction], I would not have given the instructions on intervening events . . . that the defendant had requested."

[8]  *See* 19-A M.R.S. §§ 951-A, 953 (2020).

Nadeau's inadequate performance in failing to *argue* for awards that were within the court's discretion to make, not a complete failure to submit paperwork to put the issues in the divorce case before the court for decision. An attorney's failure to pursue or advocate in support of a claim has the same effect, however, as a claim that is not raised in the first place, which was the situation addressed in *Niehoff*, because in each of those instances, when the silenced claim is legally viable and has support in the underlying record, the former client is deprived of the opportunity to obtain a favorable outcome on that claim.

[¶20]  That said, our analysis of the court's proximate cause instructions, which were not uniform as to all of Reppucci's claims, turns on whether they "fairly and accurately informed the jury of all necessary elements of the governing law."  *State v. McLaughlin*, 2020 ME 82, ¶ 25 n.10, --- A.3d --- (quotation marks omitted).  We conclude that in this case they did.

[¶21]  For each of Reppucci's claims, the jury was correctly told that if it first found that Nadeau's performance had been deficient, it must then decide whether Reppucci had proved that she would have obtained a more favorable judgment if Nadeau had performed competently. *See Niehoff*, 2000 ME 214, ¶ 9, 763 A.2d 121 ("We have indicated that to prevail in a legal malpractice action,

a plaintiff must demonstrate that he or she would have achieved a more favorable result but for the defendant's alleged legal malpractice."). As we have discussed, that has been, and remains, the test for proving a claim of legal malpractice.

[¶22] The court's different formulations of that test—"[Nadeau's] negligence caused [Reppucci] to lose an opportunity to achieve a result favorable to [her]" and "[Nadeau's] professional negligence was a substantial factor in causing an unfavorable result or harm [to Reppucci]"—represent two ways of saying that Reppucci was required to prove that she was deprived of what would have otherwise been awarded to her in the divorce, and neither constitutes error here. In proving the "case-within-a-case," Reppucci was, as the court instructed, required to establish for each of her claims that competent representation would have led to a "more favorable result," *id.*, measured from the baseline of the judgment that resulted from the divorce trial. Because the jury was correctly instructed concerning Reppucci's burden to prove proximate cause, we affirm the judgment.

The entry is:
Judgment affirmed.

Karen E. Wolfram, Esq. (orally), Fairfield & Associates, P.A., Kennebunk, for appellants James P. Nadeau and Nadeau Law Offices, PLLC

Gene R. Libby, Esq., and Keith P. Richard, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellee Wendy Reppucci

York County Superior Court docket number CV-2014-182
FOR CLERK REFERENCE ONLY